THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, *et al*., | **MEMORANDUM DECISION AND ORDER ON PETITION FOR REVIEW OF AGENCY ACTION** |
| Plaintiffs, | |
| v. | |
| U.S. DEPT. OF THE INTERIOR *et al*., | |
| Defendants, | Case No. 2:19-cv-00297-DBB |
| and | District Judge David Barlow |
| STATE OF UTAH; and GARFIELD COUNTY, UTAH, | |
| Defendant-Intervenors. | |

Before the court is Southern Utah Wilderness Alliance, The Wilderness Society, and National Parks Conservation Association's (collectively, SUWA) petition for review of agency action.[1] At issue is a Garfield County proposal to improve a 7.5-mile segment of the Burr Trail. Requesting judicial review of Bureau of Land Management's (BLM) decisions regarding the proposed improvement, SUWA generally raises three arguments. First, SUWA argues that Bureau of Land Management's (BLM) decision recognizing a Garfield County right-of-way over a portion of the Burr Trail was arbitrary and capricious.[2] Second, it contends that BLM's conclusion that Garfield County's proposed road improvement was within the scope of the right-

---

[1] Opening Brief, ECF No. 75; Amended Complaint, ECF No. 57.

[2] ECF No. 75 at 21.

of-way was arbitrary and capricious.[3] Third, it argues that BLM failed to take a sufficiently hard

look at the environmental impacts of the proposed improvement.[4] For their part, Defendants

generally argue that there is no final agency action to review and therefore that this court lacks

jurisdiction.[5] But if there is a final decision over which the court has jurisdiction, Defendants

contend BLM's conclusion that the proposed improvement was within the scope of the right-of-

way is reasonable and its consideration of environmental impacts was sufficient.[6] Having

considered the briefing, the record, and relevant law, the court determines as follows.

## BACKGROUND FACTS

At approximately 66 miles in length, the Burr Trail connects the town of Boulder on the

northwest to Bullfrog on the southeast.[7] It generally consists of four distinct segments:

(1) Boulder to the west boundary of Capital Reef National Park (30.7 miles); (2) through Capital

Reef (8.4 miles); (3) eastern boundary of Capital Reef to the northern boundary of Glen Canyon

National Recreation Area (19.2 miles); and (4) through Glen Canyon to Highway U-276 near

Bullfrog Basin Marina.[8] Roughly in the middle of the Burr Trail, a 7.5-mile portion on the

western end of Segment 3 (the Stratton Segment) travels from the eastern boundary of Capital

Reef to Stratton Road at Eggnog Junction.[9] The Stratton Segment, together with the Capital Reef

8.4-mile segment, constituted the Burr Trail's only non-chip sealed road segments.[10] This

---

[3] *Id.* at 24.

[4] *Id.* at 32.

[5] ECF No. 76 at 16–19.

[6] *Id.* at 22–39.

[7] BLM0250; ECF No. 75 at 12.

[8] BLM0250.

[9] *Id.*; ECF No. 75 at 12.

[10] BLM0250–51.

approximately sixteen-mile portion was a graveled, two-lane road.[11] The Stratton Segment of the Burr Trail is bordered on the north and east by the Mount Pennell Wilderness Study Area (Pennell WSA), except for portions that cross State of Utah lands.[12]

In 2009, Garfield County notified BLM that it would chip seal the Stratton Segment.[13] The National Park Service and conservation groups asserted that the proposed action would impact wildlife, air quality, and wilderness values in and outside of Capital Reef by increasing visitation.[14] BLM prepared a draft Environmental Assessment (EA) in 2011 but did not release it to the public or authorize the surface improvements.[15]

On June 6, 2018, Garfield County again notified BLM that it would be chip sealing the Stratton Segment, asserting that the segment was within the County's R.S. 2477 right-of-way.[16] The County sought to bring the last sixteen miles of graveled surface Burr Trail up to the chip seal standard, citing traveler "comfort and safety issues," as well as increasingly scarce gravel and water resources.[17] BLM requested any updated traffic and safety statistics the County would

---

[11] *Id.*; BLM0070.

[12] BLM 250.

[13] BLM0300.

[14] BLM0310–13; BLM0304–08; *see also* BLM0314–15 (NPS follow-up letter).

[15] BLM0847–88.

[16] BLM0035. BLM has long taken the position that Garfield County holds an R.S. 2477 right-of-way over the Burr Trail. *See, e.g., Sierra Club v. Hodel*, 675 F. Supp. 594, 600 (D. Utah 1987) (observing that the Federal Defendants, including the BLM, took the position that "Garfield County holds a valid right-of-way over the Burr Trail"), *aff'd in part, rev'd in part on other grounds*, 848 F.2d 1068 (10th Cir. 1988); *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1218 (D. Utah 2000) (noting that the federal defendants conceded the existence of Garfield County's R.S. 2477 right-of-way over the Capitol Reef National Park segment of the Burr Trail); *Kane County, Utah v. Kempthorne*, 495 F. Supp. 2d 1143, 1158 n.15 (D. Utah 2007) (noting that a BLM management plan of the Grand Staircase-Escalante National Monument identified the Burr Trail as an R.S. 2477 right-of-way), *aff'd sub nom. Kane County Utah v. Salazar*, 562 F.3d 1077 (10th Cir. 2009).

[17] BLM0046, 50.

3

want it to consider, but no specific response appears in the record.[18] However, BLM indicated that it received additional information it requested in July 2018.[19] BLM determined that the proposed chip seal was an improvement to the County's right-of-way under R.S. 2477 and was within the scope of the right-of-way.[20] It determined that the project was reasonable and necessary and prepared an EA to determine whether the proposed project would adversely impact the surrounding public lands and resources.[21] In particular, BLM evaluated the impact to the Mount Pennell Wilderness Study Area (WSA), adjacent to portions of the Stratton Segment.[22]

In its EA, BLM determined no direct impacts to the Mount Pennell WSA from the proposed chip seal project because it was within the existing disturbance of the gravel road: "The fact that the road already exists and is adjacent to the WSA will not change, whether the road remains graveled or is chip sealed."[23] BLM also evaluated indirect impacts resulting from noise, dust, and visual disturbance.[24] After receiving comments, BLM issued a Finding of No Significant Impact (FONSI) on April 26, 2019.[25] Based upon its review of the EA, BLM determined that the proposed chip seal project "will not adversely affect the surrounding public lands or resources, including the wilderness values of the Mount Pennell WSA."[26]

---

[18] BLM0038 (stating "if the County has updated traffic numbers, maintenance efforts, safety stats, that you think would be important for [BLM] to include/consider during our review, we would appreciate having that information.").

[19] BLM0251.

[20] BLM0249–51.

[21] BLM0249, 250; IM 2008-175 at 4.

[22] BLM0249

[23] BLM0254.

[24] BLM0254–56.

[25] BLM0270–73.

[26] BLM0271–72.

With respect to noise, BLM observed that "it is difficult to quantify how changes in roadway surface type may impact noise propagation and opportunities for solitude in areas with wilderness characteristics."[27] It found that construction would cause limited-duration noise and would be "relatively minor."[28] Indirectly, it determined the surface improvement may impact opportunity for solitude by generating more noise than the gravel road, but the opposite could also be true.[29] Specifically, chip seal surface may be quieter compared to gravel roads—vehicles travelling on the smoother surface would generate less noise.[30] But the higher travel speeds facilitated by a smoother surface would generate more noise and reach deeper into the WSA disturbing solitude and primitive recreation.[31] BLM estimated that the noise produced by vehicles on the chip seal surface would be "unlikely to impact the more remote and rugged portions of the WSA that receive higher levels of use."[32]

Considering dust generation and deposition from the road, BLM concluded that it would increase during the short-term construction, but decrease over the long run because the vehicles traveling on the sealed surface would generate less dust.[33] Dust deposition matters because nearby plants likely might experience impacts to photosynthesis, respiration, and transpiration.[34] Dust clouds also may be visible to visitors within the WSA.[35] The extent of dust spread,

---

[27] BLM0255.

[28] BLM0254.

[29] BLM0255.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

however, would depend on road conditions and climate.[36] BLM ultimately concluded that the proposed surface improvement would reduce dust dispersion, benefiting the adjacent WSA.[37]

Weighing visual impact from the improvement, BLM determined that the construction would temporarily detract from the scenic quality of the area.[38] Once completed, the chip seal, composed of colors contrasting with the land, would be visible from some parts of the WSA.[39] The BLM anticipated a relatively low impact, however, because much of the adjacent WSA land is flat, the WSA has no "key observation points," and the adjacent areas are less-visited compared to other parts of the WSA.[40]

On April 26, 2019, BLM advised Garfield County that it had determined the project was reasonable and necessary and, therefore, within the scope of the right-of-way.[41] BLM also explained that "the proposed project would not adversely affect the surrounding public lands or resources, including the Mount Pennell WSA."[42] Garfield County then commenced the chip seal project, which was finished within a few days.[43]

## STANDARD OF REVIEW

In its review of agency action, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[44] "The duty of a court reviewing agency action under the

---

[36] *Id.*

[37] BLM0255–56.

[38] BLM0256.

[39] *Id.*

[40] *Id.*

[41] BLM0279.

[42] BLM0280.

[43] ECF No. 75 at 19.

[44] 5 U.S.C. § 706(2)(A).

'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."[45]

> An agency's decision is arbitrary and capricious if the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.[46]

"When called upon to review factual determinations made by an agency as part of its NEPA process, short of a 'clear error of judgment' we ask only whether the agency took a 'hard look' at information relevant to the decision."[47] "A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action."[48] In sum, the court's review is "highly deferential."[49]

## DISCUSSION

Congress passed Revised Statute 2477 (R.S. 2477) as part of the Mining Act of 1866, generally granting "the right of way for the construction of highways over public lands, not reserved for public uses."[50] This provision effectuated a century-long federal policy of providing entitlement over unreserved lands to "private productive hands" in an effort to promote land development.[51] On October 21, 1976, Congress enacted the Federal Land Policy Management

---

[45] *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) (citation and internal quotation marks omitted).

[46] *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009) (citation and internal quotation marks omitted).

[47] *Id.*

[48] *Citizens' Comm. to Save Our Canyons*, 513 F.3d at 1176 (citation and internal quotation marks omitted).

[49] *Id.* (citation and internal quotation marks omitted).

[50] *See S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 740 (10th Cir. 2005), *as amended on denial of reh'g* (Jan. 6, 2006) (quoting Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932); 43 U.S.C. § 932 (stating: "And be it further enacted, that the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted").

[51] *See S. Utah Wilderness All.*, 425 F.3d at 740.

Act of 1976 (FLPMA), establishing a comprehensive framework for managing federal public lands and effectively preferring federal retention of lands.[52] Congress also repealed R.S. 2477, though it preserved any "valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act."[53] Although new rights of way may still be issued by the federal government, the issuances must comply with the more restrictive FLPMA.[54]

The holder of an R.S. 2477 right-of-way "may sometimes be entitled to change the character of the roadway when needed to accommodate traditional uses, but even legitimate changes in the character of the roadway require consultation when those changes go beyond routine maintenance."[55] To move forward with improvements, the right-of-way holder "must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the right of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands."[56] To implement the consultation requirement, BLM issued Instruction Memorandum 2008-175 (IM 2008) providing consultation process guidance to agencies.[57]

---

[52] *See id.*; 43 U.S.C. § 1701 et seq.

[53] PL 94–579 (S 507), PL 94–579, October 21, 1976, 90 Stat 2743; *see Kane County, Utah v. United States*, 772 F.3d 1205, 1223 (10th Cir. 2014).

[54] *See generally* 43 U.S.C. § 1761.

[55] *S. Utah Wilderness All.*, 425 F.3d at 748.

[56] *Id.*

[57] ECF No. 75-4; *see* ECF No. 76 at 5.

## I.      The Court Has Jurisdiction to Review BLM's Decision.

As an initial matter, the court must address whether it has jurisdiction over Plaintiffs'

petition. Defendants argue that BLM's determinations are not final agency actions subject to

judicial review under the Administrative Procedures Act (APA).[58]

The APA authorizes judicial review of agency actions "made reviewable by statute and

final agency action."[59] For purposes of review, an agency action is considered final if the action

"mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely

tentative or interlocutory nature"—and if it determines rights or obligations or is one "from

which legal consequences will flow."[60] Finality is to be determined "in a pragmatic way."[61]

Here, BLM previously determined that Garfield County held an R.S. 2477 right-of-way

over the Stratton Segment, and it determined that the proposed chip seal improvement was

reasonable and necessary to its continued use. It further determined that the proposed

improvement would not significantly impact the adjacent lands over which it has management

obligations. The federal Defendants argue that BLM's decision here was not final agency action

because the agency lacked authority to make legally binding determinations as to the existence

and scope of an R.S. 2477 right-of-way.[62] It is true that BLM lacks authority to make a binding

determination as to the existence of an R.S. 2477 right-of-way[63], but that is not the end of the

issue.

---

[58] 5 U.S.C. § 704.

[59] *Id.*

[60] *Ctr. For Native Ecosystems v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

[61] *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 239 (1980) (citation and internal quotation marks omitted).

[62] ECF No. 76 at 16–19.

[63] *S. Utah Wilderness All.*, 425 F.3d at 757 (holding that "nothing in the terms of R.S. 2477 gives the BLM authority to make binding determinations on the validity of the rights of way granted thereunder, and we decline to infer such

Because an R.S. 2477 right-of-way is in the nature of an easement over land managed by the federal government, the Tenth Circuit requires advance consultation prior to a county's implementing proposed changes to the roadway.[64] This advance notice affords the agency the opportunity to "effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications to the plans should be proposed."[65] In other words, BLM must do two things: assess whether the proposed improvement is within the scope of the right-of-way and evaluate the potential impacts from that development.

Here, BLM engaged in the required consultation with Garfield County. BLM determined the County's proposal was reasonable and necessary and thus within the scope of the right-of-way. It further concluded that the improvement would not significantly impact the adjacent lands.[66] Consequently, BLM's decision constitutes "the 'consummation' of the agency's decisionmaking process," and it is "not . . . of a merely tentative or interlocutory nature."[67]

The decision also was legally consequential for both the state and federal government.[68] Following its assessment, BLM's decision allowed Garfield County to invest resources in and proceed with construction of the road improvement free of impediments.[69] Thus, BLM's decision

---

authority from silence when the statute creates no executive role for the BLM."); *see id.* at 748 ("the owner of an R.S. 2477 right-of-way and the owner of the servient estate shall exercise their rights without unreasonably interfering with one another." (brackets omitted) (quoting Utah Code Ann. § 72-5-303(2)); *id.* ("The initial determination of whether the construction work falls within the scope of an established right of way is to be made by the federal land management agency, which has an obligation to render its decision in a timely and expeditious manner.").

[64] *Id.* at 747.

[65] *Id.*

[66] BLM0244, 249; *see also* BLM0851, 860–72.

[67] *Bennett*, 520 U.S. at 178 (citations and internal quotation marks omitted).

[68] *See id.* at 177–78.

[69] *See generally* BLM0244, 249; *see also* BLM0851, 860–72.

is final and reviewable under the APA even though BLM has no authority to finally determine the existence of an R.S. 2477 right-of-way. Accordingly, this court has jurisdiction over this matter.

## II.    BLM's Right-of-Way Decision Was Not Arbitrary and Capricious.

Plaintiffs challenge two aspects of BLM's decision with respect to the road improvement. First, they argue that BLM violated FLPMA when it determined that Garfield County held an R.S. 2477 right-of-way over the Stratton Segment.[70] Second, Plaintiffs contend that BLM's "reasonable and necessary" scope decision was arbitrary and capricious.[71] The court addresses each in turn.

### A.  Whether Garfield County Holds a Valid Right-of-Way Over the Stratton Segment Is a Question Not Properly Before the Court.

Plaintiffs contend that BLM's decision with respect to Garfield County's R.S. 2477 right-of-way violated FLPMA.[72] Although framed as a challenge to BLM's decision under FLPMA, Plaintiffs argue that BLM was wrong in its assessment because Garfield County does not hold a valid right-of-way over the Burr Trail segment at issue in this case.[73] Indeed, Plaintiffs broadly contend that "no federal court has ever quieted title to any stretch of the 66-mile Burr Trail in favor of Garfield County, and thus the County has no such right-of-way."[74]

---

[70] ECF No. 75 at 21–24.

[71] *Id.* at 24–31.

[72] *Id.* at 22.

[73] *See id.* ("BLM's conclusion that *Hodel I Appeal* [*Sierra Club v. Hodel*, 848 F.2d 1068, 1073 (10th Cir. 1988)] adjudicated title of an R.S. 2477 right-of-way for the 7.5-mile section of Segment 3 is wrong.").

[74] ECF No. 57 at ¶ 1; *see* ECF No. 75 at 22.

The instant case is not about whether Garfield County in fact holds such a right-of-way.[75] That question is at issue in currently pending Quiet Title Act litigation in which all of the parties here are also parties there.[76] Plaintiffs argue that BLM's decision violated FLPMA Title V because, under this provision, "BLM must . . . determine there is a valid existing right that pre-dates the [FLPMA] *and* that the improvement is within the scope of the right[.]"[77] Importantly, however, FLPMA does not require that BLM make such an affirmative determination of the existence of an R.S. 2477 right-of-way.

As it concerned the federal grant of rights-of-way over federal land, Congress' passage of FLPMA replaced the century old R.S. 2477 open grant mechanism.[78] However, "FLPMA explicitly preserved and protected R.S. 2477 rights of way in existence as of October 21, 1976."[79] Although establishing more restrictions and greater agency control, a note to the Act explained that "actions by the Secretary concerned under this Act shall be subject to valid existing rights."[80] Although FLPMA preserves existing rights-of-way, nothing in the Act—indeed "nothing in federal law"—requires BLM to determine the existence of an R.S. 2477 right-of-way.[81]

---

[75] *See* ECF No. 75 at 19–20; *but see* ECF No. 75 at 23–24 ("If the Court concludes that Garfield County does not hold an adjudicated R.S. 2477 right-of-way over Segment 3, it need not proceed further and may instead set aside BLM's decisions on the basis of this violation of FLPMA Title V alone.").

[76] *See Garfield County (1) v. United States*, No. 2:11-cv-01045-CW (D. Utah Nov. 14, 2011).

[77] ECF No. 75 at 6.

[78] *See Sierra Club v. Hodel*, 848 F.2d 1068, 1078 (10th Cir. 1988) (observing that FLPMA "departs from the federal government's earlier policy of giving away public lands, in favor of a philosophy of retention and management to maximize the multitudinous interests in the lands"); 43 U.S.C. § 1769(a).

[79] *S. Utah Wilderness All.*, 425 F.3d at 760; *see Kane County, Utah*, 772 F.3d at 1223.

[80] *See* 43 U.S.C. § 1701 note (h), PL 94–579 (S 507), PL 94–579, October 21, 1976, 90 Stat 2743.

[81] *Kane County Utah v. Salazar*, 562 F.3d 1077, 1087 (10th Cir. 2009). The Tenth Circuit has held that BLM lacks authority "to make binding determinations on the validity of the rights of way" under R.S 2477. *S. Utah Wilderness All.*, 425 F.3d at 757.

In *SUWA v. BLM*, the Tenth Circuit held that BLM lacks authority "to make binding determinations on the validity of the rights of way" granted under R.S. 2477.[82] Of course, "[t]his does not mean that the BLM is forbidden from determining the validity of R.S. 2477 rights of way for its own purposes."[83] Specifically addressing this informal determination, however, the Tenth Circuit has explained that federal law does not impose a duty on BLM to "administratively adjudicate" the existence of a right-of-way.[84] Despite Plaintiffs' argument to the contrary here, FLPMA does not require BLM to determine the existence of a valid existing right-of-way that predates the Act.[85]

Relatedly, Plaintiffs argue that BLM violated internal policy when it determined that Garfield County's right-of-way over the Stratton Segment had been adjudicated by a federal court.[86] BLM's Instruction Memorandum 2008-175 addresses the "consultation process on proposed improvements to revised statute 2477 rights-of-way."[87] It defines the "holder" of a right-of-way as "(1) a state or political subdivision of a state that holds an R.S. 2477 ROW, as adjudicated by a Federal court, or (2) a state or political subdivision of a state claiming to have an R.S. 2477 ROW that has been recognized by the BLM in an administrative nonbinding determination (NBD)."[88]

---

[82] *S. Utah Wilderness All.*, 425 F.3d at 757.

[83] *Id.*

[84] *See Kane County Utah*, 562 F.3d at 1087 (observing that "neither the statute, 43 U.S.C. § 1701 note (providing that 'all actions by the Secretary concerned under this Act shall be subject to valid existing rights'), nor the regulation, 43 C.F.R. § 2801.4 (2000)," imposes a requirement that the agency administratively adjudicate a purported R.S. 2477 right-of-way).

[85] ECF No. 75 at 6. To the extent that Plaintiffs seek a judicial determination of the existence of an R.S. 2477 right-of-way, the instant petition for review of agency action "shortcut[s] the existing processes for determining . . . unresolved R.S. 2477 claims[.]" *Kane County Utah*, 562 F.3d at 1087. Similarly, although the agency retains authority to make internal assessments for its own purposes, Plaintiffs have identified no cases—and the court has found none—authorizing review of such a decision under the APA.

[86] *See* ECF No. 75 at 21.

[87] *See* Instruction Memorandum 2008-175, ECF No. 75-4.

[88] *Id.* at 2.

13

Plaintiffs assert that BLM, under the first option, improperly relied on federal caselaw in its determination that Garfield County was a right-of-way holder.[89] Plaintiffs' argument is not well-taken because it provides no authority that the provisions in BLM's Instruction Memoranda are enforceable under the APA,[90] and the agency's power to make this decision is committed to its discretion.[91]

First, the IM provides BLM guidance on carrying out the consultation process explained in *SUWA v. BLM*.[92] Where, as here, a party challenges BLM's substantive right-of-way determination, that claim could be pursued under, for example, the Quiet Title Act.[93] As noted previously, Plaintiffs themselves are already parties in just such a case.[94] This IM is guidance, not the kind of "law" the violation of which "should invalidate agency action" under the APA.[95] In any event, BLM followed its IM; it just came to a conclusion with which Plaintiffs understandably disagree. In a NEPA case, the court's "highly deferential review" is not directed to determining if the agency is mistaken, but rather to determine if the agency's action was arbitrary and capricious. While BLM's view ultimately may or may not hold up in the previously referenced litigation, it had a non-arbitrary basis which it articulated.

---

[89] ECF No. 75 at 9–10, 9 n.5.

[90] Plaintiffs do cite two cases in which agencies failed to follow their own regulations. *N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, 952 F.3d 1216 (10th Cir. 2020); *Utahns for Better Transp. v. Dep't of Transp.*, 305 F.3d 1152 (10th Cir. 2002). But as discussed below, the record here shows that BLM followed the procedure laid out in the guidance memo, it just arrived a conclusion different from the one Plaintiffs feel is correct.

[91] 5 U.S.C. § 701(a)(2). Plaintiffs argue FLPMA mandates a BLM decision on the existence of a right-of-way, but they fail to direct the court to any such provision.

[92] *See* ECF No. 76 at 4–5.

[93] *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

[94] *See generally* 28 U.S.C. § 2409a. It is worth noting that Plaintiffs focus their challenge on whether the courts in the *Hodel* line of cases resolved the Burr Trail right-of-way question, presumably because IM 2008-175 identifies adjudication by a federal court as a method of determining the existence. As context, the record suggests that BLM has long taken the position that Garfield County holds such a right-of-way. *See* BLM0242–44 (identifying administrative decisions dating back to 1984 that determine Garfield County holds an R.S. 2477 right-of-way over the Burr Trail).

[95] *See Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1228 (10th Cir. 2004).

14

Second, whatever legal authority BLM retains to determine the existence of an R.S. 2477 right-of-way for its own purposes, that decision-making power is committed to the agency's discretion and thus involves an APA review exception.[96] The law is clear that the BLM has no executive role to play in actually determining an R.S. 2477 right-of-way.[97] But it has always had authority to make such a decision for its own internal purposes.[98] Accordingly, the court declines the invitation to opine on whether BLM correctly made its internal right-of-way decision.

**B.  BLM's Determination that the Improvement Was Within the Scope of the Right-of-Way Is Not Arbitrary and Capricious.**

Plaintiffs next challenge BLM's determination that the proposed improvement was within the scope of the right-of-way.[99] Plaintiffs argue that BLM's right-of-way scope decision was arbitrary and capricious because: (1) BLM's determination regarding safety lacked factual support and a rational explanation and it failed to consider traditional uses of the road; (2) BLM improperly relied on the disturbed width of the roadway as a measure of scope; and (3) BLM failed to explain a change in its earlier position that leaving the Stratton Segment in a graveled condition satisfied the reasonable and necessary standard.[100]

*1.  BLM Addressed Safety Considerations in Light of Traditional Uses of the Road.*

"The APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons, and the

---

[96] *See* 5 U.S.C. § 701(a)(2).

[97] *See S. Utah Wilderness All.*, 425 F.3d at 757.

[98] *Id.* ("This does not mean that the BLM is forbidden from determining the validity of R.S. 2477 rights of way for its own purposes." The BLM has always had this authority.").

[99] ECF No. 75 at 24.

[100] *Id.* at 24–25.

court cannot substitute its judgment for that of the agency."[101] A reviewing court must "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."[102] To survive this review, an agency's action must be "supported by the facts in the record."[103]

Generally, "[t]he 'scope' of a right-of-way refers to the bundle of property rights possessed by the holder of the right-of-way."[104] For more than a century, R.S. 2477 granted rights-of-way for the construction of highways over public lands.[105] Once vested, a right-of-way granted the municipality an interest in the continued use of the road "in the light of traditional uses to which the right-of-way was put."[106] "In other words, the scope of an R.S. 2477 right of way is limited by the established usage of the route" as of October 21, 1976, the date of repeal of the statute.[107] The Tenth Circuit has affirmed uses of the Burr Trail for "driving livestock; oil, water, and mineral development; transportation by County residents between Bullfrog and other cities in Garfield County; and, at least since 1973, access for tourists to Bullfrog Marina on Lake Powell."[108] The holder of a right-of-way "may sometimes be entitled to change the character of

---

[101] *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002) (citation omitted)*, as modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003).

[102] *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[103] *Id.* at 1575 ("Because the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." (brackets and internal quotation marks omitted) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50)).

[104] *Hodel*, 848 F.2d at 1079 n.9.

[105] *See Sierra Club v. Hodel*, 675 F. Supp. 594, 601–02 (D. Utah 1987).

[106] *Hodel*, 848 F.2d at 1083; *see also id.* ("Rights-of-way are a species of easements and are subject to the principles that govern the scope of easement."); *S. Utah Wilderness All.*, 425 F.3d at 747 (explaining that a right-of-way "is not tantamount to fee simple ownership of a defined parcel of territory," but "an entitlement to use certain land in a particular way").

[107] *S. Utah Wilderness All.*, 425 F.3d at 746.

[108] *Hodel*, 848 F.2d at 1084.

the roadway when needed to accommodate traditional uses."[109] "[I]mprovements on a valid R.S. 2477 right of way are limited to those reasonable and necessary for the type of use to which the road has been put."[110] Thus, "the scope of Garfield County's right-of-way is that which is reasonable and necessary to ensure safe travel" for the uses to which the right-of-way has been put.[111] Indeed, such a right-of-way may be improved "as necessary to meet the exigencies of increased travel, so long as this was done in the light of traditional uses to which the right-of-way was put as of repeal of the statute in 1976."[112] Plaintiffs contend that BLM's "reasonable and necessary" determination lacked evidence on safety of travel over the segment.[113]

In 2009, Garfield County notified BLM that it intended to improve the Stratton Segment.[114] BLM produced a draft environmental assessment "to determine whether Garfield County's proposed improvements are (1) within the scope of the recognized existing R.S. 2477 ROW, and (2) whether the improvements may adversely impact the surrounding public lands or resources, including a WSA, and lands with wilderness characteristics."[115] The County did not proceed with the improvements at that time and BLM did not release its draft EA.

In 2018, the County notified BLM that it intended to move forward with its earlier 2009 chip sealing project submittal.[116] It explained:

---

[109] *S. Utah Wilderness All.*, 425 F.3d at 748.

[110] *Id.* at 746 (internal quotation marks omitted) (quoting *Hodel*, 848 F.2d at 1083).

[111] *Hodel*, 848 F.2d at 1084

[112] *S. Utah Wilderness All.*, 425 F.3d at 746 (internal quotation marks omitted) (quoting *Hodel*, 848 F.2d at 1083).

[113] ECF No. 75 at 25–26.

[114] BLM0035 (indicating Garfield County was ready to begin the chip seal improvement to the segment at issue and that "the contemplated work is limited to the improved roadway/traveled portion of the highway and consequently is located in the center of the disturbed area, well away from areas that have been previously undisturbed").

[115] BLM0851. The 2011 EA was not released to the public and BLM did not authorize the improvements at that time. The environmental impact assessment is addressed in the next section.

[116] BLM0035.

> Traffic in the area, interest in public lands and a dry cycle has increased Garfield County's maintenance burden on the Burr Trail Road. The improved gravel surface has experienced wash boarding and creates comfort and safety issues for the travelling public. Additionally, gravel and water sources in the area are becoming increasingly difficult to obtain. Consequently, this section of the road needs to be brought to the same standard as the other 50 miles that have already been surfaced.[117]

With respect to the uses, BLM determined that "transportation of livestock; oil, water, and mineral development; transportation by County residents between Bullfrog and other cities in Garfield County; and, at least since 1973, access for tourists to Bullfrog Marina on Lake Powell," were "still the primary uses of the road."[118] BLM also explained that the Stratton Segment "has a gravel surface that is relatively rough in places, and which has experienced wash boarding in others that the County believes causes driving discomfort and safety issues for the traveling public."[119] It further determined that "the gravel and water sources in the area that could be used to maintain this portion of the road are becoming increasingly scarce and difficult to obtain."[120]

BLM appears to have adopted, among other things, Garfield County's safety rationale for the proposed improvement.[121] BLM determined that the gravel road was rough and washboarded in places, and BLM acknowledged that the County believed these presented safety issues for travel over the segment.[122] BLM's reliance on the statements of Garfield County does not mean that the facts were unsubstantiated. Nothing in the record contradicts BLM's determination

---

[117] BLM0046, 50. A chip seal, or bituminous surface treatment, is a type of surface paving generally making use of layers of asphalt and a fine aggregate or crushed rock. *See* U.S. Forest Service, ASPHALT SEAL-COAT TREATMENTS (Alan Yamada), available at https://www.fs.fed.us/eng/pubs/html/99771201/99771201.htm.

[118] BLM0245; *accord Hodel*, 848 F.2d at 1084.

[119] BLM0245.

[120] *Id.*

[121] ECF No. 75 at 26; *see* BLM0251.

[122] *See* BLM0245.

regarding the condition of the road, and the record does not suggest that BLM itself did not verify or have knowledge of the condition of the gravel road.[123] With respect to a rational connection to safety, BLM observed that the proposed improvement would "provide a stable road surface free of washouts, ruts, loose road base, as well as eliminating dust, which will provide better visibility and air quality."[124] Additionally, BLM observed that the improvement would bring this segment to the same surface standard as 50 of the 66 miles on the Burr Trail. Although noting that specific standards for a "reasonable and necessary" determination were not available, BLM stated:

> it makes sense for a proposed improvement to be reasonable and necessary if there is a need to undertake an activity on such a [right-of-way] to increase its safety and/or comfort for the traveling public, enhance the traveling experience, prevent a condition on it from worsening and/or having a detrimental effect on the environment, and the proposed improvement appears to meet that need in a way that is of appropriate scale and design, well-designed, and may not have adverse impacts on the environment.[125]

The proposed project "would not change the alignment or increase the currently disturbed area of the 7.5 mile segment of the Burr Trail," and "may have positive benefits including a reduction in fugitive dust . . . generated by motor vehicle use of the graveled 7.5 mile segment."[126]

On the record before the court, BLM's decision is not arbitrary and capricious. The agency considered relevant evidence supporting its determination that Garfield County's proposed improvement was within the scope of its right-of-way.

---

[123] Plaintiffs similarly point to BLM's statement in response to a comment that it "evaluated the information provided by Garfield County in connection with the proposed chip seal project, considered the relevant factors (as identified in IM 2008-175), and determined that the project is reasonable and necessary and, thus, within the scope of the County's ROW for the Burr Trail." BLM0274; *see* ECF No. 75 at 26–27. Despite Plaintiffs' characterization of this statement, it is not at all clear that BLM was indicating that it "had not gathered facts." *See* ECF No. 75 at 26–27.

[124] BLM0272.

[125] BLM0245.

[126] BLM0246.

2. *BLM's Reliance on Improvements Within the Disturbed Area.*

Plaintiffs argue that BLM's reliance on Garfield County's proposed improvements only to the already disturbed area of the road was arbitrary.[127] That is, they contend that the disturbed area is irrelevant to consideration of the scope of a right-of-way and BLM was wrong to account for it.

The scope of an R.S. 2477 right-of-way is that "reasonable and necessary for the type of use to which the road has been put."[128] Under Utah law the width of a right-of-way is determined considering "what was reasonable and necessary, under all the facts and circumstances, for the uses which were made of the road."[129] The width of an R.S. 2477 right-of-way "is not limited to the actual beaten path as of October 21, 1976."[130] Thus it may "be widened to meet the exigencies of increased travel, including where necessary to ensure safety."[131]

In making their "disturbed area" argument, Plaintiffs rely exclusively on cases involving trespass in which the federal government contested the scope of a right-of-way.[132] *United States v. Garfield County* involved federal plaintiffs' claims of trespass, among other things.[133] Similar claims were raised in *SUWA v. BLM*.[134] To be sure, the width of a right-of-way is not fixed by the disturbed area or roughed out boundaries of a road because easement holders are entitled to "use certain land in a particular way" and not to "fee simple ownership of a defined parcel of

---

[127] ECF No. 75 at 29.

[128] *Hodel*, 848 F.2d at 1083 (citation and internal quotation marks omitted).

[129] *Lindsay Land & Livestock Co. v. Churnos*, 75 Utah 384, 285 P. 646, 649 (1929).

[130] *Kane County, Utah*, 772 F.3d at 1223 (citing *Hodel*, 848 F.2d at 1083).

[131] *Id.*

[132] ECF No. 75 at 29–30.

[133] *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1218 (D. Utah 2000).

[134] *S. Utah Wilderness All.*, 425 F.3d at 743.

territory."[135] A county is not "free to construct such improvement as it sees fit, without prior consultation with anyone" so long as it acts within the disturbed area.[136] But these are not the circumstances of this case. Here, Garfield County indicated, and BLM acknowledged, that the proposed chip seal improvement was "confined within the existing disturbance" of the right-of-way.[137] This information is not only relevant, but critical to BLM's assessment of the potential impact to lands over which it has management responsibilities (e.g., because "all chip seal activities would be confined within the existing disturbance . . . there would be no reduction in acreage and no direct effects to the WSA").[138] The record reflects that BLM considered the disturbed area as part of a broader factual inquiry as to whether the proposed improvement was within the scope of the right-of-way.[139] In short, Plaintiffs' claim that BLM simply relied on the disturbed area to make its "reasonable and necessary" scope determination is reductive and contradicted by the record.

### 3. BLM's Reliance on Improvements Within the Disturbed Area.

Lastly, Plaintiffs argue that the BLM improperly changed its position, without explanation, on the "reasonable and necessary" surface treatment of the 7.5-mile Stratton Segment.[140] The APA contains no requirement that an agency's decisions be subject to a heightened standard every time the agency does something new or different than it did

---

[135] *S. Utah Wilderness All.*, 425 F.3d at 747.

[136] *Garfield County*, 122 F. Supp. 2d at 1242; *S. Utah Wilderness All.*, 425 F.3d at 748 ("Just because a proposed change falls within the scope of a right of way does not mean that it can be undertaken unilaterally.").

[137] BLM0254.

[138] *Id.*

[139] *See* BLM0246.

[140] ECF No. 75 at 30.

previously.[141] However, an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."[142] Indeed, "[i]t would be arbitrary or capricious," for an agency to forego a reasoned explanation when "its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account."[143]

In support of their changed-policy argument, Plaintiffs point to a 1995 FONSI in which BLM indicated that its preferred alternative from an EA addressing the length of the Burr Trail "would retain chip-seal surface in those areas presently chip sealed" within Segment 3.[144] The Stratton Segment was not chip-sealed at that time. By implication, Plaintiffs contend, BLM affirmatively determined that "keeping this 7.5 mile section of the Burr Trail graveled was 'reasonable and necessary for public lands and will not cause unnecessary or undue degradation of public lands or derogation of park/recreation area values.'"[145] By finding the proposed chip seal of the Stratton Segment reasonable and necessary in 2019, Plaintiffs assert that BLM was required to explain why it "changed its mind."[146]

The record provides sufficient information indicating that a quarter century later, things had changed. Most of the rest of the Burr Trail had been chip sealed since 1995, so it was desirable to bring this segment up to that standard.[147] BLM accepted Garfield County's

---

[141] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009) ("We find no basis in the Administrative Procedure Act or in our opinions for a requirement that all agency change be subjected to more searching review. The Act mentions no such heightened standard.").

[142] *Id.* at 515.

[143] *Id.* at 515–16.

[144] ECF No. 75 at 31; *see* BLM0226.

[145] ECF No. 75 at 31 (quoting BLM0225).

[146] *Id.* at 30.

[147] BLM0251.

explanation that chip sealing the road would improve traveler safety and comfort and that replacement gravel was becoming more scarce and expensive.[148] There is no basis for arguing that it was arbitrary and capricious for BLM to take that view in 2019 or to claim that NEPA would be violated if BLM did not explain further.[149] Accordingly, BLM was not required to provide more explanation of its prior assessments.

In sum, BLM's determination that the proposed improvements fell within the scope of Garfield County's right-of-way was not arbitrary and capricious. BLM considered the proposed change, the safety rationale behind it, and accounted for historic uses. It therefore based its decision on consideration of factors relevant to this type of decision.[150] BLM's assessment was not counter to the evidence before the agency, and there is no basis to conclude that it made a clear error of judgment.[151]

### III.    BLM's Environmental Assessment Complied with NEPA.

Plaintiffs argue that BLM's EA failed to meet the requirements of NEPA.[152] Specifically, they contend that BLM failed to consider foreseeable indirect and cumulative impacts to adjacent lands and resources from Garfield County's proposed road improvement.

NEPA requires federal agencies to assess the environmental consequences of major federal action.[153] The Act has two aims, it "places upon an agency the obligation to consider

---

[148] *Id.*

[149] *See F.C.C.*, 556 U.S. at 514–15.

[150] *See Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 839 (10th Cir. 2019) (stating that an agency's decision is arbitrary and capricious if it "(1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment" (citation and internal quotation marks omitted)).

[151] *Id.* (quoting *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009)).

[152] ECF No. 75 at 32.

[153] 42 U.S.C. § 4321; 40 C.F.R. § 1501.1.

every significant aspect of the environmental impact of a proposed action," and "it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process."[154] Agencies are required to "take a 'hard look' at the environmental consequences before taking a major action."[155] "The role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious."[156] As opposed to substantive requirements, NEPA "imposes procedural requirements intended to improve environmental impact information available to agencies and the public."[157] In other words, "NEPA merely prohibits uninformed—rather than unwise—agency action."[158]

As the federal defendants point out, major federal action is not a possibility where the agency has no "discretion to take the action in question."[159] Here, BLM has a role in the consultation process. But ensuring the "construction proposal did not exceed the scope of the R.S. 2477 right-of-way through public lands," standing alone, does not constitute major federal action.[160] However, "when a proposed road improvement will impact a [wilderness study area] the agency has the duty under FLPMA § 603(c) and the regulation to determine whether there are less degrading alternatives, and it has the responsibility to impose an alternative it deems less degrading upon the nonfederal actor."[161] "While this obligation is limited by BLM's inability to

---

[154] *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983) (citations and internal quotation marks omitted).

[155] *Id.*

[156] *Id.* at 97–98.

[157] *New Mexico ex rel. Richardson*, 565 F.3d at 704 (citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 371 (1989)).

[158] *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989).

[159] ECF No. 76 at 32.

[160] *Hodel*, 848 F.2d at 1090.

[161] *Id.* at 1090–91.

deny the improvement altogether, it is sufficient . . . to invoke NEPA requirements."[162] Accordingly, BLM had an obligation here to assess impacts to the Mount Pennell WSA.[163]

Plaintiffs argue that BLM's EA lacked assessment of indirect and cumulative impacts.[164] Indirect effects can include those "related to induced changes in the pattern of land use . . . and related effects on air and water and other natural systems, including ecosystems."[165] "Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time."[166]

Here, BLM assessed the impacts to the Mount Pennell WSA from the proposed chip seal improvement to the Stratton Segment.[167] Because the graveled road already exists, BLM's focus was on the impact from temporary construction and the longer-term impact from a new road surface. BLM noted that the road itself would not make its way into the WSA, but the road construction would create other indirect impacts.[168] Construction would generate some temporary and variable noise that could be heard in the WSA.[169] Although, noting it would be difficult to quantify the noise impacts from traffic on the finished road, BLM concluded that there may be more noise because vehicles would be travelling faster, but the smoother chip seal surface would also be quieter than a washboard surface.[170] Ultimately, BLM concluded that the

---

[162] *Id.*

[163] *Id.* at 1090; *see also Kane County, Utah*, 772 F.3d at 1224 ("[B]efore a holder makes 'improvements' to a right-of-way, the land management agency must be consulted to allow it an opportunity to determine if the improvement is 'reasonable and necessary' and to 'study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands.'" (quoting *S. Utah Wilderness All.*, 425 F.3d at 748)).

[164] ECF No. 75 at 33–36, 36–39.

[165] 40 C.F.R. § 1508.8(b).

[166] *Utahns for Better Transp.*, 305 F.3d at 1172–73.

[167] *See* BLM0247–83.

[168] BLM0254.

[169] BLM0254–55.

[170] BLM0255.

"[c]hanges in road surface and noise along this 7.5 mile portion of the boundary are unlikely to impact the more remote and rugged portions of the WSA that receive higher levels of use, such as Mount Pennell, based on their distance from the Burr Trail."[171]

With respect to dust, BLM determined that the construction would generate some but this would occur over a limited duration.[172] However, it concluded that "[o]ver the long run, changing the surface of the 7.5 mile portion of the Burr Trail from gravel to a chip seal surface will reduce the amount of dust generated by vehicles, including the height of dust plumes."[173] The sealed road surface would no longer be a source of dust, but there may be particulates deposited from tire wear, exhaust, etc."[174] The dust generated on the road, primarily from construction, could be seen from parts of the WSA impacting opportunities for solitude and deposition of dust could impact nearby vegetation.[175] However, dust deposition within the WSA would be limited depending upon many factors including precipitation and wind.[176]

The impacted view from the WSA would include heavy equipment during construction and new materials, generally contrasting new colors and textures.[177] The road surface could be finished with a non-native gravel, which might stand out more than locally-sourced gravel.[178] But BLM determined that the visual impact would be minimal because there were few observation points in the Mount Pennell WSA. "In addition, portions of the WSA adjacent to the

---

[171] *Id.*

[172] *Id.*

[173] *Id.*

[174] BLM0255–56.

[175] BLM0255.

[176] *Id.*

[177] BLM0256.

[178] *Id.*

project area are relatively flat and receive limited use when compared to other portions of the WSA that include more prominent features but are located further away from the project area."[179]

Plaintiffs also argue that BLM failed to consider the indirect and cumulative impacts from increased traffic and visitation to the Mount Pennell WSA.[180]  In support, Plaintiffs cite *Hodel I* for the proposition that "improving the road surface . . . would cause a number of foreseeable impacts requiring NEPA analysis, among them 'large increases in future traffic.'"[181] But while *Hodel* involved the Burr Trail, the project there was far greater in scope than the one here: "The project in this case runs ten miles along one WSA and twelve miles along another, with some sections affecting both. It involves realignments, widening, considerable blasting, a significant improvement in the quality of the road surface, and large increases in future traffic."[182] A statement about future traffic made 33 years ago involving a much larger and more significant project does not support Plaintiffs' argument here.[183] Plaintiffs also cite *Kane County, Utah*.[184] But *Kane County* does not involve NEPA in any respect, let alone consider whether an agency's decision was arbitrary and capricious for failure to consider possible increased traffic and visitation.[185] In short, neither case helps Plaintiffs here.

---

[179] BLM0256.

[180] ECF No. 75 at 33–35.

[181] ECF No. 75 at 33 (quoting *Hodel*, 848 F.2d at 1092).

[182] *Hodel*, 848 F.2d at 1092..

[183] The project here involved resurfacing a much shorter segment of the road and did not involve realignments, blasting, or widening of the road.

[184] ECF No. 75 at 33–34; *see generally Kane County, Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019), *cert. denied sub nom. United States v. Kane County, UT*, No. 20-96, 2021 WL 231653 (U.S. Jan. 25, 2021), *and cert. denied sub nom. Kane County, UT v. United States*, No. 20-82, 2021 WL 231976 (U.S. Jan. 25, 2021).

[185] The court in *Kane County* reviewed "SUWA's challenge to the district court's denial of its second motion to intervene." *Kane County*, 928 F.3d at 882. The court relatedly addressed Kane County's argument that SUWA lacked constitutional standing. *Id.* at 886.

Plaintiffs are correct that traffic is only briefly mentioned and then only in the

Interdisciplinary Checklist:

> Once construction is complete, traffic to the area is expected to stay relatively the same with the possibility of small increases in tourism potential. Tourism to the Capitol Reef National Park has grown every year according to NPS visitation figures posted annually but this area is well off the main travel corridor and this project is not expected to draw a large amount of visitors to this particular area.[186]

Plaintiffs argue that this is insufficient and that traffic discussions in a 1993 EA and a

reference to traffic and public use issues raised by the National Park Service in 2009 and 2010

show that more was required.[187] On this record, the court finds that it would be speculative to

rely on comments made between a decade and a quarter century ago to find that BLM violated

NEPA. Additionally, the traffic and visitation references identified in the 2009 and 2010 National

Park Service letters are generally not illuminating.[188] Also, the draft 2011 EA, which the

aforementioned letters were meant to influence, considered and rejected the traffic and use

concerns.[189] Finally, the record does not contain any concerns from the National Park Service in

2019. The court will not find BLM in violation of NEPA for disagreeing with another agency's

views expressed a decade earlier, particularly when the agency did not reiterate those views. The

court agrees with Plaintiffs that it would have been preferable for BLM to elaborate on its

---

[186] BLM0264.

[187] ECF No. 75 at 33–35; ECF No. 80 at 20–21.

[188] BLM0311 ("Changes in traffic and public use may occur . . . and could obligate the NPS to alter the manner in which we manage these resources"); BLM318 (noting that 30 years earlier there had been statements about potential "change[s] in tourist use patterns [and] overuse of existing recreational facilities," among other things).

[189] BLM0860 ("Current traffic use/visitation patterns are not anticipated to change as a result of the proposed project"); BLM861 ("we do not have any solid evidence of increased traffic after over a decade of the chip sealing of 76 percent of the Burr Trail and we have concurring conclusions to that effect from CRNP's [Capitol Reef National Park] own documents and data").

finding that traffic is expected to stay "relatively the same,"[190] but the court's review is "highly deferential"[191] and it "cannot substitute its judgment for that of the agency."[192]

Considering the totality of the evidence, the agency's decision to forego an extended discussion on traffic volume and visitation to the area in its EA was not arbitrary and capricious. The limited evidence suggested minimal change to the use of the road and contrary statements were speculative or conclusory.

In these assessments, BLM adequately considered the reasonably foreseeable impacts to the Mount Pennell WSA from the road improvement over the Stratton Segment. It acknowledged some direct and indirect impacts would occur, but determined they would be minimal, temporary, or in some cases potentially beneficial.[193] Though the assessment was not extensive, neither was the project. On this record, this satisfies the "hard look" requirement under NEPA.[194] Consequently, BLM's decision was not arbitrary and capricious.

Signed March 31, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[190] See ECF No. 75 at 36.

[191] *Citizens' Comm. to Save Our Canyons*, 513 F.3d at 1176 (citation and internal quotation mark omitted).

[192] *Utahns for Better Transp.*, 305 F.3d at 1164 (citation omitted).

[193] *See* BLM0271–73.

[194] BLM also discussed some of the mitigation measures proposed by Garfield County in construction of the improvement. These would further reduce the impacts from the chip sealing process and limit or eliminate any impact outside of the existing road boundaries. *See* BLM0282–83.